**PAN AMERICAN FIRE & CASUALTY CO., Appellant,**

v.

**Vernon PATTON, Appellee.**

No. 7038.

Court of Civil Appeals of Texas.

Amarillo.

March 27, 1961.

Cade & Bowlin, Lubbock, for appellant.

Huff, Splawn & Bowers, Lubbock, for appellee.

CHAPMAN, Justice.

This is a workmen's compensation case. Appellant, Pan American Fire & Casualty Co. seeks reversal of a judgment by the trial court based upon a jury verdict rendered for Vernon Patton, appellee, for total and permanent disability with the amount to be paid in a lump sum.

The first two points raise respectively questions of no evidence and the general insufficiency of the evidence to support the verdict of the jury and the judgment of the court.

A careful study of the 211-page statement of facts shows an abundance of evidence to sustain the jury verdict. Prior to the injury for which appellee recovered he had made his living by physical effort. In addition to the testimony of appellee himself and a number of fellow workmen to the effect that he was unable to do work requiring strenuous physical effort after the injury complained about, we have the lengthy and detailed testimony of the examining physician, Dr. Estes. He produced X-rays which he interpreted as showing appellee had sustained a ruptured intervertebral disc between the fourth and fifth lumbar vertebrae. Other doctors did not so interpret the X-rays but the jury obviously believed Dr. Estes and the other witnesses he corroborated and who corroborated him. Appellant's own medical witness, Dr. Klingensmith testified without objection that Dr. Thomas, the bone and joint medic he turned appellee over to, recommended spinal fusion for correction of his low back trouble. In fact, appellant, while questioning its own witness, Dr. Klingensmith, elicited the following testimony:

"Q. Did you then call in another doctor? A. Yes, I referred Vernon to Doctor Edward Thomas who is a bone and joint specialist in Amarillo.

"Q. I see. Did you confer with and consult with Doctor Thomas concerning his findings? A. Yes, sir.

"Q. And what was the joint result of your conferences with him as to what he had? A. Well, I turned this condition over to Doctor Thomas because I don't do that type of work at all. But Doctor Thomas told me that he felt that Vernon had a strain or a sprain of his low back. And from then on he was in charge of the treatment of his back. * * *"

Then without objection appellee elicited from Dr. Klingensmith the following:

"Q. All right. And, of course, as Mr. Cade has brought out, that you worked jointly with Doctor Thomas on this condition, and as he brought out, you conferred with him on that back condition leaving the actual decisions and whatnot up to Doctor Thomas as to anything to be done to his back, is that correct? A. That's correct."

* * * * * *

"Q. So, in your joint conferences with Doctor Thomas and you seen him daily, the first thing that you saw Doctor Thomas put him in traction, didn't you? A. Yes.

"Q. He kept him in traction some seven or eight days, didn't he? A. Approximately. I don't know whether it was five or seven."

* * * * * *

"Q. And you knew that Doctor Thomas on the third trip over there recommended surgery? You knew that, didn't you? A. Yes, sir.

"Q. And, of course, he wouldn't go in there and do surgery for a strain, would he? A. Dr. Thomas told me that he had a chronic strain or sprain. That was what he told me was wrong with Vernon."

* * * * * *

"Q. What kind of operation was he going to do? A. A spinal fusion.

"Q. All right. And that spinal fusion, you go in there and you fuse those vertebrae together don't you? A. Yes, sir.

"Q. And that makes your back just as stiff as a poker if the operation is a success, doesn't it? A. Yes, sir.

"Q. And that is just as disabling— in other words, whether it's a ruptured disc, whether it's a protruding disc, or whether it's as you call it a chronic sprain, or whether you call it a dislocated vertebra, and of those, when you have to go in there and do that operation, the disability would be the same, wouldn't it, when they got through? A. Well, the operation is the same. I mean, I don't know about the disability. A fusion of the back does not always result in disability.

"Q. Well, to go around on that, Doctor, a lot of it is according to what kind of work a man tries to do, isn't it? A. Yes.

"Q. In other words, you or I could have a back fusion and would disable us very little, isn't that correct, because that we don't do—or I don't if I can get out of it, I don't do any heavy work that I can get out of. Isn't that right? A. That's right.

"Q. Where, on the other hand, an old boy that has to go out, for instance, and lift a hundred pound sack of cement, say, unload three or four hundred of them off of a truck and has to move fifty gallon drums of oil, do heavy work like that, a stiff back would be several times more disabling to him than it would to a professional man, wouldn't it? A. Yes, sir, I assume it would be."

■ All this testimony just related was introduced without an objection. In addition to that testimony, Dr. Estes testified to certain tests he made with appellee in his examination in which he said appellee could not fake injury, showing objective symptoms, which he also interpreted as indicating a ruptured intervertebral disc. Without specifically quoting further evidence, the effect of Dr. Estes's testimony, taken together with the other testimony, if believed, was such as to give the jury sufficient reason to find appellee totally and permanently disabled from performing the usual tasks of a workman and that the disability resulted from the compensable injury complained about. Accordingly, points one and two are overruled.

■■ The third point asserts error of the court in overruling appellant's Amended Motion for New Trial based on "voluntary hearsay testimony of Dr. Klingensmith". We find no reversible error in the point. Appellant made the proof himself and nowhere objected to the testimony as being unresponsive, or hearsay or a surprise and never asked the court to instruct the jury not to consider it before it closed its testimony. Additionally, proof of a similar nature without objection, as heretofore shown, was subsequently made by appellee in questioning Dr. Klingensmith. The only authority cited by appellant on the point is Traders & General Insurance Company v. Wheeler, Tex.Civ.App., 271 S.W.2d 679, an N. R. E. case not at all analogous on the facts to the instant case in that the testimony complained about there was permitted over timely objections. The case is no authority for the point raised in the instant case because a completely different record is made.

The last point asserts error of the trial court "in refusing to instruct the jury that they could not consider past, present, and future medical bills and hospital expenses incurred as a result of plaintiff's injury in their deliberation on Special Issue 13."

■ Special Issue 13 was the "lump sum" issue. It was given in the customary form without any accompanying instruction. As part of Appellant's regular objections to the court's charge we find only

the following relating to the point here raised:

"Defendant further objects to said Special Issue No. 13, for the reason that the Court has, over defendant's objections, admitted extensive testimony in this record as to future medical payment or future medical expenditures which may be incurred by the plaintiff; and that there should be a charge by the Court in connection with this issue to the effect that the plaintiff, if compensation be payable or if any compensation is recovered as a result of the injury in question as claimed by the plaintiff, that the plaintiff is not obligated for the payment of any such sums of money which may be expended as a result of his injury incurred in the course of his employment, if it was so incurred; for the reason that such testimony as admitted is highly prejudicial, particularly with reference to this issue as well as to all others in that it conveys to the jury the idea that the payment of medical was, under the compensation law, a burden of a claimant injured thereunder."

We believe such record does not comply with Rule 273 Vernon's Annotated Texas Rules of Civil Procedure. That rule provides: "Either party may present to the judge and request such written instructions, special issues, definitions or explanatory instructions, as he desires to be given to the jury; * * * A request by either party for any instructions, special issues, definitions or explanatory instructions shall be made separate and apart from such party's objections to the court's charge." The objections to the failure to give the instructions complained about clearly does not comply with the provisions of the rule just quoted. Additionally, we are not of the opinion that the error, if any, complained about amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in

the case within the purview of Rule 434, V.A.T.R. The point is overruled.

This is simply a typical fact-issue workmen's compensation case where the jury has resolved all the issues in favor of the claimant, and we have no authority to destroy their prerogative in that respect by sending it back for another trial.

By counterpoint appellee urges this court to assess ten per cent penalty against appellant for frivolous appeal under Rule 438, V.A.T.R. Though we have found the record to be without reversible error, we cannot say the appeal was taken solely for delay and that appellant did not have sufficient cause for taking such appeal. We believe it would be a reasonable assumption to say that the appeal was taken upon advice of appellant's counsel. To say under this record that counsel did not have sufficient cause to take an appeal would be to deny their right to look at the case from the standpoint of advocates.

The judgment of the trial court is in all things affirmed.